at all, or arguments not to exceed 15 minutes per side. Mr. Kent Masterson-Brown, for the appellant. Thank you. Counsel. May it please the court. I'm Kent Masterson-Brown. I do represent the appellants in this case, Dr. William P. Grise and his late wife. I represent  her estate, Mary L. Grise. We're here after the United States District Court in the Eastern District of Kentucky dismissed their complaint and dismissed their 1983 claims and some others on account of Dr. Grise allegedly entering into a stipulation as to probable cause. And they further dismissed the unlawful search claim in this case. One, because Dr. Grise allegedly entered into a stipulation for probable cause. And also because the court believed that the unlawful search that was conducted was in fact a protective sweep. And we feel on all those counts that court should be reversed. And let me begin by going into just some background facts of this case. This case arose in an incident that occurred on January 2nd, 2011, when Dr. Grise and Mrs. Grise were quietly enjoying their home in rural Madison County. However, a lot of parking literally all day long, and I'm sure you can have been in this situation before, where nothing can be more annoying. And Dr. Grise, they live in a rural environment. And he owns property, large amounts of property, in front of his house and then in the rear. And his neighbors are far apart. Dr. Grise took a shotgun, went out on his own property and fired two rounds into the ground. And the dog quieted down, and Dr. Grise went back to his home and was taking his gun down. When he saw out his picture window, and his picture window looks straight down Parkwood Drive, a road that comes into his area where he lives. And looking down that road, he saw a car coming at a very high rate of speed with its bright lights on. And Dr. Grise became concerned. Dr. Grise is 82 years old, at least at the time this occurred. His wife is 79. She's had a stroke and is somewhat of an invalid. And he saw this car coming out. He could not tell anything about the anything else. And he became scared. And he turned to his wife and he says, I think this is trouble. Now, there's been trouble out there before, he's testified. And he reached into his drawer, pulled out a pistol, put it in his pocket and walked out on the front steps to see who this person was. It turns out the car stopped. And Dr. Grise was standing in his front lawn. And a deputy sheriff got out of this car. And his name was Ronald Allen. And he went over to Dr. Grise and asked him in kind of a confrontational tone, did you fire two shots into the ground with a shotgun? To which Dr. Grise responded, I broke no law. And he didn't break any law. Grise turned around. Could I interrupt you, please? Certainly. I can only speak for myself, but we've read your briefs. We understand what the facts are. And there's at least one interesting legal argument attended to all of this. And it starts with some apparent confusion because you claim that this is an issue about collateral estoppel, but it's pretty clear from the opinion that the district court was looking at judicial estoppel. I think the court absolutely misconstrued the estoppel the court was applying. The court cites yeoman against the commonwealth. I think you're missing the import of my point. Whether the court is right or wrong is a question that we will have to get to. You say that he relied upon collateral estoppel. Yes. On the face of the opinion, he's using judicial estoppel. Or she. It might be incorrect. Might be incorrect. But you seem to be attributing a different doctrine to Judge Caldwell than the one that she actually used. I don't think so, Judge. And let me explain why. You're not moving off of that one, are you? No, I'm not. The judge, in the opinion, one cites yeoman against the commonwealth. And yeoman against the commonwealth is the case, of course, that changed the law in Kentucky with respect to issue preclusion. And she goes through the entire litany of what Section 27 of the Restatement of Litigated the issue of whether he entered into a stipulation, that that works. You can be precluded. When she should have said that the issue is whether or not he stipulated to the actions brought, charges brought against him in the Madison District Court. And the question here is, if he made that stipulation as to probable cause, it was simply not litigated. It wasn't decided. And he can raise these again in a 1983 action. And to call it something else is simply wrong. There are two questions here, at least it seems to me. One is, did he actually stipulate? And that's already been litigated up through the state court system. And they find that he did stipulate. So unless you've got some sort of theory, I don't see where we revisit that. No, I'm not going to revisit it for purposes of this argument either. The question then becomes, what is the impact or the effect of that stipulation in the state court proceeding in this federal court Section 1983 proceeding? Right. So what is the basis upon which, well, I guess the way to phrase this is, is there an element of any of your probable cause? Certainly. All right. Now, he's already stipulated two probable cause. So just tell us succinctly, what's the theory then that you can still litigate something that requires probable cause in federal court when you've already litigated it in state court and your laws? You haven't litigated it. You haven't litigated whether or not the issues raised in the Madison District Court were, he was guilty of any of them. That has not been litigated. The questions to which he may have stipulated the probable cause were the issues, the charges against him. And you cannot now, assuming he stipulated a probable cause, use that to preclude a 1983 action. That's a preclusion argument. Yes. Well, that's what we're speaking of. I understand, but you're not really raising a challenge to the judicial estoppel argument that Judge Caldwell purported to make. Is that correct? I couldn't find one in here. I found the issue preclusion argument. There's also, I can pull up the opinion, but my memory of the opinion is that there's some reliance on judicial estoppel. Is that correct? There isn't. I mean, she never uses that term. She never uses that term. Now the counsel for the Appellees have, and they've raised it, however, and they've raised it in this idea that somehow Dr. Grice has said one thing in the case and then changed his mind. Now they've said that, but the fact of the matter is Dr. Grice has never in this case changed his mind with respect to that stipulation as to probable cause, ever. He has systematically, constantly, always maintained he never entered into it. Now for purposes of argument here, we're saying he did, but what it means here after yeoman against the commonwealth is you cannot use it to preclude these issues. Because nothing was actually litigated and nothing was actually decided. And this goes, too, with respect to the Fourth Amendment claims of Dr. Grice. Judge Caldwell dismissed his Fourth Amendment claims based upon the fact that he somehow entered into a stipulation as to probable cause. And as I said in the brief, is that there's one case you can cite to resolve that whole issue. And that's Haring against Procease, which Justice Thurgood Marshall decided, where Procease was pled guilty to possession of drug paraphernalia. Mr. Brown, let me interrupt you. Yes. Because I think we're getting a little far afield over the question of collateral estoppel or judicial estoppel. You say the opinion never mentions judicial estoppel. Page 9. Dr. Grice's false arrest, malicious prosecution, and illegal search claims fail based on the doctrine of judicial estoppel. I didn't remember. And then it goes on to discuss judicial estoppel. Collateral estoppel is the issue of whether he can relitigate the question of whether he stipulated as to probable cause. He did, and he's lost on that in state court. So then you go on to figure out what's the effect of that. You switch, then, from collateral estoppel to the question of whether the effect of that means you then lose on judicial estoppel. But what would be the difference, Judge? I mean, if you're precluded, then what's the difference between the — The difference is there are two separate doctrines, and they serve different purposes. And if I remember right, they have different elements. So I'm trying to ask you about judicial estoppel. You indicate, well, that was not even an issue here, which it clearly was. And then you launch off into collateral estoppel. So all I'd like you to say, just humor me for a minute and assume this is eventually going to come down to judicial estoppel. Why was she wrong on judicial estoppel? Well, here's the question I would ask, looking at that, is that what does she even mean by judicial estoppel in this setting? Well, I was looking at the wrong order, and Judge McKeague was able to pull it up faster than I was and am. But I took it to mean that when you, in one forum, gain some benefit by saying one thing, you can't, in another forum, gain another benefit by saying the opposite in a judicial setting. That's not black letter. That's my rough way of understanding judicial estoppel. And so her reasoning is you're now stuck with the idea, because of collateral estoppel, you're stuck with a determination that you indeed agreed that there was probable cause, and you gained something from that, presumably. And now over here, in order to succeed, you have to say there is no probable cause. You can't do that because of judicial estoppel. That's the thrust of her opinion. My first question is, do you respond to that in your brief? Yes, I do. Where is it even mentioned? I respond to that in the facts, in the sense that – No, no, I'm talking about in the argument. Do you respond to that in your argument? In the reply brief, I go to extensive discussion about whether or not he has changed his position. And he has never changed his position. And, in fact, his position was on March 14, 2012, when he reappeared before the Madison District Court, and they asked him, have you complied with everything? He says, no, I did not stipulate a probable cause, and I will not. That's in the Madison District Court. But you lost that in state court. The question of whether he stipulated a probable cause has been determined. The question of what the impact or effect of that is what we have to sort out here. But we have to figure out what doctrine it's under first. And so just please go back and look at the order, and I think you'll see on page 9 it's judicial estoppel. So if you have something to say about judicial estoppel, it would be very useful to us in your rebuttal. I did. I mean, and I have laid it out in the reply brief that he has never changed his position. All right. Thank you. Thank you, counsel. You'll have your rebuttal time. May it please the Court, Mr. Brown. My name is Barry Stills, and I have the pleasure of representing Ronald T. Allen, Nelson O'Donnell, and the Madison County Sheriff's Department in this appeal. I'll just jump right to the matter that brings us here, is whether or not the district court used the right standard of collateral estoppel or judicial estoppel. She used both. At different stages. Sir? At different stages. At different stages, yes. She used collateral estoppel to, and she highlighted it in her opinion, of whether or not Dr. Grice stipulated a probable cause in the Madison district court. I think what my colleague does in his brief is conflates those two, and those are two different doctrines being judicial estoppel and collateral estoppel. He conflates those two, and those are two significantly different documents. In Dr. Grice's collateral estoppel issue preclusion, he is stopped from saying that he didn't, that there wasn't probable cause in this case, and what flows from that is where she goes with the judicial estoppel, correctly goes with the judicial estoppel. And the majority, if not all, of his 1983 claims require that he show a lack of probable cause, which he can't do because of the stipulation. Mr. Stilts, I assume that you're aware of the debate in the law enforcement legal community about whether somebody's stipulation of probable cause in a state criminal case to dispose of that should or shouldn't then preclude you from being able to protect your federal constitutional rights in a 1983 claim. So there are cases that deal with the question of whether that's really what was intended, was it really voluntary, there are a whole set of factors to look at. Neither of you really address that. Do you have any guidance for us on that? That is true, but I think if you look at the decision of Pennington versus Dollar Tree stores, that kind of lays out the judicial estoppel and how it plays into collateral estoppel and the stipulation of probable cause. So should that analysis be employed here, do you think, or not? The analysis, I'm sorry, Judge McKee. Under Pennington. The analysis of whether or not you can stipulate and still maintain your civil rights or your challenge to civil rights. I think you can under Kentucky state law, at least under the broadest decision that we cited, and you would have to put limiting language in your stipulation. Well, the reason that I'm asking the question is this was just sort of a throwaway at the state court proceeding about, oh, and by the way, I forgot something, he has to stipulate to probable cause. It's not even really clear that he said yes to that. But assuming that he did, then the question is what is the effect or the import of that? And nobody has analyzed, the district judge didn't analyze because nobody raised this question. And you guys haven't briefed it because I think, frankly, it didn't occur to Mr. Brown. So should we be looking at the cases that talk about when a stipulation is to probable cause doesn't preclude filing a Section 1983 claim? Should we even go down that path? Or should we just say because that's an argument that hasn't been raised, we should ignore it? Well, it was not an argument raised by Mr. Brown in his brief. Clearly. But, Your Honor, I would respectfully disagree that the district mass and district court didn't analyze this. They conducted a hearing. Dr. Grice was the only one who testified as to whether or not he stipulated. So I would disagree with this throwaway argument. I guess the county court didn't address the question of what the federal constitutional right consequences of that were. Certainly it did not. Do you have a 1983 either constitutional or federal statutory claim? Certainly it did not, Your Honor. But Dr. Grice was represented by counsel at all levels of his challenge to whether or not he stipulated a probable cause. I don't know whether his counsel, I obviously can't inquire into what his counsel told him about what that would do or not do. But the Madison district court certainly found that he made a voluntary stipulation. That he appealed to the Madison circuit court. They agreed. We get that. There's no question about whether he did. It's already been determined. I'm not trying to beat a dead horse here, Your Honor. So I guess the question that I would, if the question is posed, do you go down that path, that's not something that was raised by the appellant. I do know the concept of a court can, this court can look at certain different legal theories. But I believe if you look at both opinions by Judge Caldwell, she analyzed this properly. She analyzed it under a collateral estoppel theory of whether or not Dr. Grice, with regard to his claims, stipulated a probable cause. And what that causes is a snowball effect of losing certain rights to later contest, abuse of process, false arrest, malicious prosecution, illegal search. Those things do fall by the wayside. Because if you do have probable cause, it's an element that the plaintiff has to show that you lack probable cause to succeed on those claims. The search, I want to touch on, I've got nine minutes, but the search claims with regard to Mrs. Grice, I think if you look at Judge Caldwell's opinion there, rendered in February of this year, she, what authorized the search or the entry into the home was the exigent circumstances emergency aid situation. Where you had a, whether or not Dr. Grice, when he came back into the house, knocked his wife down or she fell. However it was, you had a frail, admittedly a frail 79-year-old woman laying on the floor. Paramedics were called by Deputy Allen to attend to her. That's an objective fact. And he went into this residence with those paramedics. That's what Mrs. Grice says, or said in her deposition. And he did a limited, a very limited, limited protective sweep of this house. This house is a small house. The door opens up into the living room. There is a cased opening that goes into the, and there's a video of all this that's in the record. You can see how small and what a confined area we're talking about that he looked into. And I will say this, in our brief, in response to Mr. Brown's brief this time, in his original brief to this court, it's the first time that he's ever argued that Deputy Allen looked, and I keep wanting to call him Detective Allen because he is a detective now, but Deputy Allen looked into closets and other drawers and all that. There's no record citation or any proof that would support that kind of a search was done. And what he did was he looked, he walked into a cased opening, looked, or he claims he didn't do a search, but if you look at it from the light most favorable to the plaintiff, what he did was a very limited search just to make sure that he was protected, the paramedics protected, and Mrs. Grice was protected. He didn't know he was called out to a shots fired situation in the middle of the night. He didn't know if there's other people in this house, which is, they don't even make that allegation that they told him there was nobody else in the house. They don't make that allegation. There's nothing in the record to support that. He did a very limited search, and consequently all the other aspects, like negligent hiring and training, supervision, the other claims against the supervisors, go by the boards because there was no constitutional violation created or caused by Deputy Allen in his search or in his arrest of Dr. Grice. Your Honors, I have six more minutes, and I don't mean to be flippant or any manner at all or not take this seriously, but I think that we would ask that the court affirm both decisions of Judge Caldwell, that she ruled properly, especially with regard to Dr. Grice, with the doctrines of collateral estoppel as to whether or not only he stipulated probable cause and what happens to his fact. If you do stipulate to that, what happens to your rights after that? I think the case of Pennington v. Dollar Tree and the Watkins v. Bailey, I believe, is the judicial estoppel case, the seminal judicial estoppel case. Interestingly, listening to the prior argument about defense counsel's behavior there, the plaintiff's counsel's behavior in that case was somewhat, to use your words, Judge Rodgers, out there a little bit. They still found a stipulation or a position taken by the plaintiff that they could not come back and change again and try to argue in a malpractice claim that they had something else. You're bound and determined to use your six minutes. No, ma'am. No, sir. I'll promise. You're using your six minutes by talking to us about the case we just heard. Yes. Well, it's not too smart on my part, is it, Judge McKee? Thank you. Thank you all, and we would ask that the matter be affirmed. Thank you. Thank you. Mr. Brown. Your Honors, in my reply, beginning at page 3 through I think it's 5 or 6, I reference the situation with respect to he allegedly making different statements. But I want to emphasize in this that Dr. Grice never stipulated a probable cause, no matter what the courts may have found. So we just ignore the full faith and credit clause then? No, no, no. I'm not saying that. What I'm saying is that in this case we've got to look a little deeper in terms of what we do to protect a man's rights like this. Mr. Brown, let me see if I can help you out here. I'm truly trying to help you. Collateral estoppel, which you are focused on, deals with the question of did he enter into a stipulation. And whether you like it or not, he did. Now, you then want to go on to say that the claim isn't barred by collateral estoppel because under that doctrine there wasn't a determination about these other issues. You're right. Nobody's arguing that. The effect of that stipulation as to probable cause under collateral estoppel is then used in the judicial estoppel analysis by the district court. And for you to win you have to convince us why the judicial estoppel argument is wrong, or I mean conclusion was wrong. And she tells you what the doctrine is and she tells you why it applies. Well, the only thing I can say, Your Honor, is that given the facts behind all this, Dr. Grice has simply, in this case, would be simply losing all of his constitutional rights over a matter that at best is confusing. And in the other preclusion arguments, I mean, you can't stipulate to probable cause and lose your constitutional rights under 1983 action unless you explicitly agree to it. Well, you absolutely can waive any 1983 claim, including constitutional rights. Now, whether he should have been held to do so in this case is the issue we have to decide. So why shouldn't he be held to have waived those in this case? Because it was all done orally. The court could have had him enter into a diversion agreement where it would have waived his rights. They did not. It was all done orally and it was confusing. Where do we find a case that addresses whether something has to be orally or in writing or whether the state court could have done something differently within its sovereign powers? Is there a case that deals with that? I don't know of a case that deals with that, Judge. But I do know that in a circumstance like this, Dr. Grice became a victim. Well, maybe. Maybe he's got a malpractice claim. Thank you. Thank you very much. The case will be submitted. I appreciate your arguments. The other cases are on the briefs, and you can proceed to dismiss the court. This honorable court is now adjourned.